UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
EMPIRE COMMUNITY DEVELOPMENT          :
LLC,                                                          :
                                                                 :     **REPORT AND RECOMMENDATION**
                                          Plaintiff,        :     22 Civ. 4046 (RPK) (VMS)
                                                                 :
            -against-                                     :
                                                                 :
JHON CAMPOVERDE, MERS AS            :
NOMINEE FOR INDYMAC BANK,          :
FSB,                                                           :
                                                                 :
                                     Defendants.         :
-------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Empire Community Development, LLC ("Empire" or "Plaintiff") commenced this foreclosure action against Defendants Jhon Campoverde ("Mr. Campoverde") and senior lienholder MERS as nominee for Indymac Bank, FSB ("MERS") (together, "Defendants") concerning a piece of real property encumbered by a mortgage (the "Mortgage") assigned to Plaintiff located at 33-27 99th Street, Corona, NY 11368 (the "Property"). See generally Compl., ECF No. 1.

On August 23, 2023, this Court respectfully recommended that the District Court deny Plaintiff's first motion for default of foreclosure and sale against Defendants without prejudice because 1) Plaintiff had failed to properly serve Mr. Campoverde with the summons and the complaint (the "Complaint"); 2) Plaintiff had not complied with the Servicemembers Civil Relief Act (the "SCRA") with respect to Mr. Campoverde; and 3) granting Plaintiff's request to extinguish the interest of MERS in the Property would have been premature at the time. See ECF Nos. 19 & 20. The Court mailed its first report and recommendation (the "First R&R") to Defendants MERS at 1901 East Voorhees St., Suite C, Danville, IL 61834-4512; MERS at 28

1

Liberty St., New York, NY 10005; Sharon McGann-Horstkamp as General Counsel for MERS at 1818 Library St., Suite 300, Reston, VA 20190; Matthew Martin as General Counsel for First Citizens Bancshares, Inc., at 4300 Six Forks Road, Raleigh, NC 27609; MERS at P.O. Box 2026, Flint, MI 48501-2026; MERS at 11819 Miami St., Suite 100, Omaha, NE 68164; and Jhon Campoverde, 33-27 99th St, First Floor, Corona, NY 11368.  Objections to the First R&R were due by September 6, 2023.  See ECF No. 20.  On September 12, 2023, in light of Plaintiff's failure to timely object, the District Court adopted the First R&R and directed Plaintiff to "file a status letter within 30 days of the date of this order detailing its proposal as to future actions in this case as well as the results of its investigation as to the current addresses for [D]efendants." Dkt. Order 9/12/2023.

Plaintiff's counsel timely filed a status report stating that "[w]e are working with our process server to obtain sufficient information to support Plaintiff's service on [Mr. Campoverde] to provide to the Court beyond the Affidavits of Service previously filed, in addition to proof of [Mr. Campoverde]'s non-military status."  ECF No. 21.  Plaintiff requested leave to file a renewed motion for a default judgment of foreclosure and sale against Defendants within 60 days.  See ECF No. 21.  The District Court granted Plaintiff's request.  See Dkt. Order 10/19/2023.  Plaintiff timely filed the renewed motion for a default judgment and supporting exhibits.  See Motion for Default, ECF No. 22.

Before this Court is Plaintiff's second motion for default judgment of foreclosure and sale against Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure ("FRCP").  See Motion for Default, ECF No. 22.  Plaintiff moves for damages in the total amount of $286,679.35, plus additional interest, as well as equitable relief.

For the reasons set forth below, the Court respectfully recommends that the motion for a default judgment be granted.

## I.    BACKGROUND

The parties are referred to the First R&R for the factual and procedural history in this case.  See ECF No. 20 at 1-5.

On August 27, 2024, this Court held a telephonic conference with Plaintiff's counsel Alyssa Kapner to discuss Plaintiff's claims regarding MERS's prior mortgage on the Property.  See ECF Order 8/23/2024; 8/27/2024 Minute Entry.  The Complaint alleges that MERS "holds a prior mortgage which is adverse to Plaintiff's interest . . . . The senior mortgage for MERS as nominee for Indymac Bank, FSB, appears to be prior and adverse to the mortgage being foreclosed and is subject to be [sic] declared invalid and extinguished pursuant to Article 15 of the Real Property Actions and Proceedings Law."  ECF No. 22 ¶¶ 27-28.

During the conference, Plaintiff's counsel referred the Court to the Consolidation, Extension and Modification Agreement of Mr. Del Pozo, the seller of the Property, with MERS, dated February 2, 2005 (the "Consolidation Agreement").  See Official Transcript from 8/27/2024 Status Conference, ECF No. 23 at 3:8-16; New York City Automated City Register Information System ("ACRIS") Online Records on the Property, Consolidation Agreement, CFRN 2005000563921, recorded on Oct. 11, 2005.[1]  Under the Consolidation Agreement, MERS agreed to act as nominee for Indymac Bank, FSB with regard to two of Mr. Del Pozo's mortgages on the Property, which are listed in Exhibit A of the Consolidation Agreement (together, the "Del Pozo Mortgage").  See ACRIS Online Records on the Property, Consolidation Agreement, CFRN 2005000563921, recorded on Oct. 11, 2005.

---

[1] Available at https://a836-acris.nyc.gov/DS/DocumentSearch/BBL (last visited on 9/2/2024).

As to the Del Pozo Mortgage, Plaintiff's counsel explained that it was fully satisfied at the time Mr. Del Pozo deeded the Property to Mr. Campoverde on December 29, 2005. See ECF No. 23 at 3:14-16. The deed transfer between Messrs. Del Pozo and Campoverde (the "Deed") is recorded on New York City's ACRIS. See ACRIS Online Records on the Property, Deed, CFRN 2006000042939, recorded on Jan. 24, 2006. According to Plaintiff's counsel, the Del Pozo Mortgage was not properly discharged on ACRIS along with the recording of the transfer of the Deed. See ECF No. 23 at 5:6-23. ACRIS's records for the Property do not include a satisfaction of mortgage by Mr. Del Pozo to MERS as nominee for Indymac Bank, FSB. See Results for Online ACRIS Search Results for Property by Borough/Block/Lot.[2]

ACRIS's online records regarding the Property do show a satisfaction of mortgage for a separate Del Pozo mortgage with CitiMortgage less than three months after Mr. Del Pozo deeded the Property to Mr. Campoverde on December 29, 2005. See ACRIS Online Records on the Property, Satisfaction of Mortgage, CFRN 2006000215119, dated March 10, 2006, recorded on Apr. 18, 2006.

ACRIS also shows that, at about the same time as the transfer of the Deed for the Property from Mr. Del Pozo to Mr. Campoverde, Mr. Campoverde executed two separate mortgages with MERS on December 29, 2005. See ACRIS Online Records on the Property, Mortgage, CFRN 2006000042940, recorded on Jan. 24, 2006; see ACRIS Online Records on the Property, Mortgage, CFRN 2006000042941, recorded on Jan. 24, 2006. Mr. Campoverde later executed two satisfactions of mortgage, one on October 26, 2006, see Satisfaction of Mortgage, CFRN 2006000620103, recorded on Nov. 6, 2006, and another on November 1, 2006, see

---

[2] Available at https://a836-acris.nyc.gov/DS/DocumentSearch/BBL (results for search criteria: Queens/01714/0049) (last visited on 8/30/2024).

Satisfaction of Mortgage, CFRN 2006000634710, recorded on Nov. 15, 2006, both of which involved MERS. MERS's involvement in these transactions shows that MERS was on notice of the activity related to the Property based on Mr. Campoverde's Mortgage and possession of the Property at least since December 29, 2005.

## II.    LEGAL STANDARD

FRCP Rule 55 establishes a two-step procedure by which a party may obtain a default judgment. See Bricklayers & Allied Craftworkers Local 2, Albany, NY Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (citing Fed. R. Civ. P. 55); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, if a party has failed to plead or otherwise defend against an action, the clerk of court must enter a certificate of default by making a notation on the record. See Fed. R. Civ. P. 55(a). Second, after this entry of default, if the defaulting party still fails to appear or move to set aside the default, the court may enter a default judgment if the complaint is well-pleaded. See Fed. R. Civ. P. 55(b). The trial court has "sound discretion" to grant or deny a motion for default judgment. See Enron Oil, 10 F.3d at 95.

The court must therefore ensure that (1) the plaintiff completed each of the required procedural steps to move for default judgment pursuant to Local Civ. R. 55.2(c); and (2) the plaintiff's allegations, when accepted as true, establish liability as a matter of law. See SAC Fund II 0826, LLC v. Burnell's Enter., Inc., 18 Civ. 3504 (ENV) (PK), 2019 WL 5694078, at *4 (E.D.N.Y. Sept. 7, 2019) (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).

In the First R&R, which was adopted, this Court found that Plaintiff had complied with Local Civil Rule 55.2(c). See ECF No. 20 at 14; ECF Order 9/12/2023. In the present motion for a default judgment, Plaintiff included the sworn affidavit of process server Gina Votta stating

that Defendants were served with the notice of motion for a default judgment motion, as well as with the supporting papers and exhibits via first class mail on December 11, 2023. See ECF No. 22-9 at 1. The Court finds that Plaintiff properly served Defendants with the present motion for a default judgment.

The Court will now turn to whether (1) Plaintiff properly served Mr. Campoverde with the summons and Complaint; (2) the factors relevant to a default judgment are satisfied in this case; (3) Plaintiff has established Defendants' liability under New York law; and (4) the discharge of the Del Pozo Mortgage should be granted.

## III.    DISCUSSION

### A.  Service On Mr. Campoverde Is Complete

The First R&R determined that, based on the record before the Court, Plaintiff's service of the summons and Complaint on Mr. Campoverde was insufficient under New York law and FRCP Rule 4(e). See ECF No. 20 at 12-14; ECF Order 9/12/2023.

Under Federal Rule of Civil Procedure 4(e)(2), an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally" or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2). Under the New York Civil Practice Law and Rules ("N.Y.C.P.L.R." or "CPLR"), "[s]ervice of process must be made in strict compliance with statutory methods for effecting personal service upon a natural person pursuant to CPLR 308." Est. of Waterman v. Jones, 46 A.D.3d 63, 65, 843 N.Y.S.2d 462, 464 (2d Dep't 2007) (internal quotation marks omitted).

Section 308 of the CPLR provides that service may be accomplished by (1) personal delivery of the summons "within the state to the person to be served," N.Y. C.P.L.R. § 308(1);

(2) delivery of the summons to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and "mailing the summons by first class to the person to be served at his or her actual place of business," N.Y. C.P.L.R. § 308(2); (3) "delivering the summons within the state to the agent for service of the person to be served," N.Y. C.P.L.R. § 308(3); or (4) "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served" then mailing to either the person's last known address or actual place of business, only if "service under paragraphs one and two cannot be made with due diligence," N.Y. C.P.L.R. § 308(4).

As stated in the First R&R, which was adopted, "[v]alid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant." See Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc., 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998); ECF No. 20 at 6; ECF Order 9/12/2023. To that end, "[a] court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. R. Baker & Son All Indus. Servs., Inc., No. 13 Civ. 4590 (JS) (GRB), 2014 WL 6606402, at *2 (E.D.N.Y. Aug. 4, 2014), report & recommendation adopted, 2014 WL 4536911 (E.D.N.Y. Sept. 11, 2014) (internal quotation marks omitted).

In the First R&R, which was adopted, this Court found that service of the summons and Complaint on Mr. Campoverde was incomplete because "Plaintiff failed to establish that it served Mr. Campoverde at his actual dwelling or usual place of abode." ECF No. 20 at 12; see Dkt. Order 9/12/2023. The Court found that "[a]lthough the process server stated that the

7

Property was Mr. Campoverde's place of residence, he did not state the basis for this belief. The presence of someone with Mr. Campoverde's family name at a location may be an indication of a connection to the person to be served, but it is not sufficient evidence of Mr. Campoverde's usual dwelling or place of abode." Id. (internal citations & quotation marks omitted).

In support of the present motion for a default judgment, Plaintiff includes the sworn affidavit of Plaintiff's counsel, Alan Weinreb. See ECF No. 22 at 3. Mr. Weinreb states that he "conducted an online search of Defendant Jhon Campoverde using his social security number to confirm that [Mr.] Campoverde resides at the Subject Premises being foreclosed, 33-27 99th Street, Corona, NY 11368, which is the address [Mr.] Campoverde was served with the Summons and Complaint, and he has resided at that address since 2006 until current day. See attached search at Exhibit 'D'." Id. ¶ 7. The affidavit also includes a statement that "pursuant to the Note at paragraph 6, 'GIVING OF NOTICES' specifically states: 'any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address[.]'" Id. ¶ 8 (citing ECF No. 1, Exh. C).

The Court reviewed Exhibit 'D' of the renewed motion for default which lists the Property as Mr. Campoverde's address from November 1, 2006 through December 2, 2023.[3] See ECF No. 22, Exh. 'D'. The Court also reviewed paragraph 6 of the Note as referenced in counsel's affidavit and paragraph 15 of the Mortgage titled "AGREEMENT ABOUT GIVING NOTICES REQUIRED UNDER THIS MORTGAGE," which provides that ". . . any notice that must be given to me under this Mortgage will be given by delivering it or by mailing by certified mail addressed to [Mr. Campoverde] at [the Property]." ECF No. 1-1 at 8. Based on this evidence, the Court finds that Plaintiff had sufficient reason to believe the Property was an

_____

[3] Plaintiff filed the second motion for default judgment on December 11, 2023. See ECF No. 22.

appropriate location for service of the summons and Complaint on Mr. Campoverde on August 10, 2022.  <u>See</u> ECF No. 13.

The Court also finds that Plaintiff properly notified Defendants of the renewed motion for a default judgment by mailing a copy of the renewed motion and supporting papers to Mr. Campoverde at the Property address and to MERS as nominee for Indymac Bank, FSB at 1901 E. Voorhees St., Suite C, Danville, IL 61834 on December 11, 2023.  <u>See</u> ECF No. 22-9 at 1. The Court thus finds that Plaintiff properly served Defendants with the renewed motion for a default judgment and that service of process on Mr. Campoverde was complete.

### B.  Servicemembers Civil Relief Act

As stated in the First R&R, which was adopted, the SCRA provides that "[i]n any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit[.]"  50 U.S.C. § 3931(b)(1)(A); <u>see</u> ECF No. 20 at 15; Dkt. Order 9/12/2023.  The First R&R found that the motion for a default judgment failed to comply with the SCRA in that the motion did "not contain an affidavit or similar document confirming a reasonable investigation into the question of whether Mr. Campoverde is on active military service."  ECF No. 20 at 16.  This Court added that "Plaintiff was required to base any nonmilitary affidavit on an investigation conducted after Mr. Campoverde defaulted" and could not solely rely "upon the statement of the process server who delivered the summons and complaint, who stated that he asked Ms. Campoverde whether Mr. Campoverde 'was active in military service and received a negative reply.'"  ECF No. 20 at 17 (citing ECF No. 13).

The present motion for a default judgment includes a supplemental affirmation by counsel Alan Weinreb.  See ECF No. 22, Exh. 'E'.  The affirmation states that on December 11, 2023, Mr. Weinreb "conducted a department of defense manpower data center database search as to the defendant Jhon Campoverde.  Said search does not indicate that the defendant was or is in the military.  See annexed."  Id. at 1 ¶ 2.  The exhibit attached to the supplemental affirmation is a status report generated by the U.S. Department of Defense indicating that Mr. Campoverde was not active in military service as of December 11, 2023.  See ECF No. 22, Exh. 'E' at 2.

The Court finds that Plaintiff has satisfied the SCRA's requirement by filing an affidavit offering evidence that Mr. Campoverde is not in military service.

### C.  The Factors Relevant To A Default Judgment Are Satisfied

When considering whether to grant a default judgment, a court must be "guided by the same factors [that] apply to a motion to set aside entry of a default."  First Mercury Ins. Co. v. Schnabel Roofing of Long Island, Inc., 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011); see Enron Oil, 10 F.3d at 96.  These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense.  See Swarna v. Al-awadi, 622 F.3d 123, 142 (2d Cir. 2010); Enron Oil, 10 F.3d at 96; Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp., No. 20 Civ. 1834 (FB) (SJB), 2022 WL 584536, at *3 (E.D.N.Y. Feb. 3, 2022), report & recommendation adopted, No. 20 Civ. 1834 (FB) (SJB), 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022)).

As to the first factor, a defendant's failure to respond to the complaint after service is sufficient to demonstrate willfulness.  See Bds. of Trs. v. Frank Torrone & Sons, Inc., No. 12

10

Civ. 3363 (KAM) (VMS), 2014 WL 647098, at *4 (Feb. 3, 2014) (the defendant's non-appearance and failure to respond equated to willful conduct), report & recommendation adopted, 2014 WL 674098 (E.D.N.Y. Feb. 21, 2014); Traffic Sports USA v. Modelos Restaurante, Inc., No. 11 Civ. 1454 (ADS) (AKT), 2012 WL 3637585, at *2 (E.D.N.Y. Aug. 1, 2012) (same), report & recommendation adopted, 2012 WL 3626824 (E.D.N.Y. Aug. 22, 2012); cf. Green, 420 F.3d at 109 (in the context of a motion to vacate a default judgment, the defendants' failure to respond to the complaint or "take action after receiving notice that the clerk had entered a default against them," supported a finding of willfulness).

As described above, this Court finds that Plaintiff properly served Defendants with the summons and Complaint. Defendants failed to answer the Complaint and did not request an extension of time in which to respond or otherwise notify the Court of any intention to participate in this litigation. The Court thus finds that Defendants deliberately defaulted, establishing the requisite willfulness.

As to the second factor, Defendants' failure to respond or appear, combined with Plaintiff's efforts to prosecute its case, is sufficient to demonstrate that ignoring the default would prejudice Plaintiff, "as there are no additional steps available to secure relief in this Court." Flanagan v. N. Star Concrete Const., Inc., No. 13 Civ. 2300 (JS) (AKT), 2014 WL 4954615, at *7 (E.D.N.Y. Oct. 2, 2014) (quoting Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)); Trs. of the Local 7 Tile Indus. Welfare Fund v. Caesar Max Const., Inc., No. 18 Civ. 1339 (FB) (LB), 2019 WL 1130727, at *7 (E.D.N.Y. Feb. 11, 2019) (same) (collecting cases), report & recommendation adopted, 2019 WL 1129430 (E.D.N.Y. Mar. 12, 2019). If Plaintiff's renewed

motion for a default judgment were to be denied, Plaintiff would have no alternative legal redress to recover the amounts owed under the Mortgage and the Note.

As to the third factor, Defendants cannot establish a meritorious defense because, where they have not "filed an answer, there is no evidence of any defense." Bridge Oil, 2008 WL 5560868, at *2 (citing Mason Tenders Dist. Council v. Duce Constr. Corp., No. 02 Civ. 9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).

As all three factors are satisfied, a default judgment would be proper in the present circumstances if the Complaint were adequately pleaded.

### D. Complaint Allegations

This Court now considers whether the facts alleged in the Complaint establish Plaintiff's entitlement to foreclose on the Property, to extinguish subordinate liens, to award appropriate damages, and to discharge the Del Pozo Mortgage.

#### 1. Standing

A plaintiff may establish standing in a mortgage foreclosure action "by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note." Gustavia Home, LLC v. Rutty, 785 F. App'x 11, 14 (2d Cir. Sep't. 16, 2019) (quoting JPMorgan Chase Nat'l Ass'n v. Weinberger, 142 A.D.3d 643, 644, 37 N.Y.S.3d 286, 288 (2d Dep't 2016)). "Thus, although assignment of a mortgage without the accompanying note does not provide the assignee with a right to the debt, the delivery or assignment of a note without the accompanying mortgage transfers the debt and can confer standing on the recipient." E. Sav. Bank, FSB v. Thompson, 631 F. App'x 13, 15 (2d Cir. 2015) (emphasis in original). A foreclosing lender can demonstrate a valid transfer of the obligation by written assignment or physical possession. See U.S. Bank, N.A. v. Collymore, 68 A.D.3d 752, 754, 890 N.Y.S.2d 578,

12

580 (2d Dep't 2009) ("Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation and the mortgage passes with the debt as an inseparable incident.").

In order to establish standing in this case, Plaintiff cites to <u>Onewest Bank, N.A. v. Guerrero</u>, No. 14 Civ. 3754 (NSR), 2016 WL 3453457 (S.D.N.Y. June 17, 2016). <u>See</u> ECF No. 22 at 12. In <u>Onewest Bank</u>, the district court held that, although affidavits lacking factual detail such as when the plaintiff received physical possession of the note are usually insufficient to establish possession, the plaintiff cured this deficiency by including a sworn statement of an assistant secretary of OneWest Bank, N.A. stating that the plaintiff "has been in possession of the original Note since at least May 1, 2014 and it is located at Deutsche Bank, Santa Ana." 2016 WL 3453457, at *4.

In this case, the second motion for a default judgment and an exhibit to the Complaint include sworn statements attesting that Plaintiff is in physical possession of the Note and that Plaintiff has been in possession of the original Note since before the commencement of the action. As an exhibit to the Complaint, Plaintiff included a sworn affidavit of note possession by Priscilla Serrato, Assistant Secretary of Fay Servicing, LLC, as attorney-in-fact for Plaintiff, dated November 16, 2020, a year and a half before the commencement of this action. <u>See</u> ECF No. 1, Exh. C ¶ 1. Ms. Serrato states: "I can attest that Fay is in possession of the original Promissory Note . . . , on behalf of Empire. Empire is the owner and holder of the Note, with all corresponding allonges. Said note was and is held in Fay's office . . . where it remains today, on behalf of Empire." <u>Id.</u> ¶¶ 8-9. In addition, ACRIS records reflect that the Mortgage was last assigned to Plaintiff. <u>See</u> ACRIS Online Records on the Property, Assignment of Mortgage, CFRN 20200000644956, recorded on Feb. 19, 2020.

New York's Real Property Actions & Proceedings Law ("RPAPL") §§ 1304 and 1306 require certain notices to be provided to defendant borrowers and New York State, respectively, as a "condition precedent" to commencing legal foreclosure proceedings.  See RPAPL §§ 1304(3), 1306(1).  The § 1304 notices must be provided to borrowers "at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against . . . borrowers at the property . . ." and must conform to certain form, procedural and substantive requirements. See RPAPL § 1304.  The § 1306 notice or notices must be filed "with the superintendent of financial services . . . within three business days of the mailing of the [1304 notice]."  RPAPL § 1306.

Plaintiff states that it complied with the 90-day notice requirement under RPAPL § 1304(1) and issued the notice to Mr. Campoverde on July 15, 2021.  See ECF Nos. 22-1 ¶ 14 & Exh. E; 22-2 at 2.  Plaintiff has also "complied with the registration requirements of RPAPL § 1306(1)."  ECF Nos. 22-1 ¶ 14 & Exh. E.

The Court finds that Plaintiff has pled sufficient facts to show that it is the owner and holder of the Note and Mortgage, such that it was standing to bring this motion for a default judgment of foreclosure and sale against Defendants, and that it has satisfied the notice condition precedent to commence the action.

## 2.  Liability

For the reasons noted above, this Court's First R&R, which was adopted, recommended that Plaintiff's first motion for a default judgment be denied.  See ECF No. 20 at 18; Dkt. Order 9/12/2023; First Mot. for Default Judgment, ECF No. 19.  At the time, the Court found that "Mr. Campoverde's liability is not yet established' and "[b]ecause extinguishing MERS's interest would be premature at this time, the Court respectfully recommends that the motion for a default

judgment motion with respect to MERS be denied without prejudice."  ECF No. 20 at 18.  The Court will now look at whether Plaintiff's present motion for a default judgment sufficiently establishes Mr. Campoverde's liability and whether the Court should discharge Defendant MERS's interest in the Property as nominee.

### a.    Mr. Campoverde's Liabity

In order to "obtain a default judgment in 'a mortgage foreclosure action under New York law, the lender must prove . . . the existence of an obligation secured by a mortgage, and a default on that obligation.'"  Miami Home LLC v. Viera, No. 18 Civ. 1398 (NGG) (SJB), 2023 WL 5123888, at *6 (E.D.N.Y. Aug. 10, 2023) (citing & quoting Gustavia Home, LLC v. Rice, No. 16 Civ. 2353, 2016 WL 6683473 (BMC), at *2 (E.D.N.Y. Nov. 14, 2016) (internal quotation marks omitted)); see E. Sav. Bank, FSB v. Ferro, No. 13 Civ. 5882 (SJF) (GRB), 2015 WL 778345, at *6 (E.D.N.Y. Feb. 24, 2015).  "[I]n a New York mortgage foreclosure action, a plaintiff makes a prima facie case . . . where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor."  CIT Bank, N.A. v. Escobar, No. 16 Civ. 3722 (JFB) (SIL), 2017 WL 3614456, at *4 (E.D.N.Y. June 16, 2017) (quoting E. Sav. Bank, FSB v. Bright, No. 11 Civ. 1721 (ENV) (MDG), 2012 WL 2674668, at *3 (E.D.N.Y. July 5, 2012)), report & recommendation adopted, 2017 WL 3634604, at *1 (E.D.N.Y. Aug. 18, 2017); see U.S. v. Leap, No. 11 Civ. 4822 (DRH) (WDW), 2014 WL 1377505, at *2 (E.D.N.Y. Feb. 18, 2014) ("In the usual course, once a plaintiff mortgagee in a foreclosure action has established a prima facie case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor."), report & recommendation adopted, No. 11 Civ. 4822 (DRH) (WDW), 2014 WL 1383139 (E.D.N.Y. Apr.

8, 2014); <u>U.S. v. Watts</u>, No. 13 Civ. 3211 (ADS) (WDW), 2014 WL 4275628, at *3 (E.D.N.Y. May 28, 2014) (same) (citing <u>U.S. Bank, N.A. v. Squadron VCD, LLC</u>, No. 10 Civ. 5484 (VB), 2011 WL 4582484 (S.D.N.Y. Oct. 3, 2011)).

As noted above, Mr. Campoverde executed a Note and Mortgage to Argent Mortgage Company, LLC for a sum of $160,000.00 on September 26, 2006.  <u>See</u> ECF No. 1 ¶ 8 & Exh. B. Plaintiff is now the owner and holder of the Note.  <u>See id.</u> at Exh. C ¶¶ 8-9.  Although Plaintiff complied with the 90-day notice requirement under RPAPL § 1304(1) and issued the notice to Mr. Campoverde on July 15, 2021, <u>see</u> ECF Nos. 22-1 ¶ 14 & Exh. E; 22-2 at 2, Mr. Campoverde failed to respond to the default notice and the 90-day notice.  <u>See</u> ECF No. 1 ¶ 17. Mr. Campoverde failed to make the monthly payments that were due under the Mortgage since July 1, 2016.  <u>See id.</u> ¶ 13.  As of November 7, 2023, Mr. Campoverde's outstanding unpaid principal balance under the Mortgage was $156,365.67, plus accrued interest as of November 7, 2023, in the amount of $130,313.68, for a total sum of $286,679.35.  <u>See</u> ECF No. 22, Exh. C ¶¶ 5-8.

The Court finds that Plaintiff has established its ownership of the Mortgage and Note, the provisions of such documents and evidence of Mr. Campoverde's default thereunder, which is sufficient to establish Plaintiff's entitlement to foreclosure and sale of the Property in order to pay the outstanding damages.

### b. Relief As To MERS

Under New York law,

> Where the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage . . . has expired, any person having an estate or interest in the real property subject to such encumbrance may maintain an action against any other person or persons . . . to secure the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom; provided, however, that no such action shall be maintainable in any case where the mortgagee . . . or the successor of [the mortgagee] shall be in possession of the affected real property at the time of the commencement of the action.

N.Y. RPAPL § 1501(4) (omitting references to vendor's liens).  "To discharge a mortgage pursuant to N.Y. RPAPL § 1501(4), a plaintiff must demonstrate: '1) that it has an estate or interest in the real property; 2) that all necessary parties to the action were joined; and 3) that the applicable statute of limitations for commencing a foreclosure action has expired without the commencement of a foreclosure action.'"  53rd St., LLC v. U.S. Bank Nat'l Ass'n, 8 F.4th 74, 78 (2d Cir. 2021) (citing & quoting Gustavia Home LLC v. Envt'l. Control Bd., No. 18 Civ. 6485 (MKB) (CLP), 2019 WL 4359549, at *5 (E.D.N.Y. Aug. 21, 2019)).  The statute of limitations to commence a foreclosure action in New York is six years.  See CPLR § 213(4); Gustavia Home, 2019 WL 4359549, at *8.  "When a mortgage is payable in installments, the statute of limitations begins to run from the date of the acceleration of the mortgage."  Gustavia Home, 2019 WL 4359549, at *8 (citing & quoting Loiacono v. Goldberg, 240 A.D.2d 476, 477, 658 N.Y.S.2d 138 (2d Dep't 1997).  "Commencing a foreclosure action has been deemed clear notice that the mortgagee is accelerating the mortgage debt."  Id. (internal citations omitted).  "Pursuant to RPAPL 1501(4), a person having an estate or an interest in real property subject to a mortgage can seek to cancel and discharge of record that encumbrance where the period allowed by the applicable statute of limitations for the commencement of an action to foreclose the mortgage

has expired, provided that the mortgagee or its successor was not in possession of the subject real property at the time the action to cancel and discharge of record the mortgage was commenced." Bank of Am., N.A. v. Scher, 205 A.D.3d 985, 987-88, 169 N.Y.S.3d 639, 642 (2d Dep't 2022) (citing & quoting Scarso v. Wilmington Sav. Fund Socy., FSB, 200 A.D.3d 817, 818, 159 N.Y.S.3d 477, 477 (2d Dep't 2021).

As to the first element under RPAPL § 1501(4) and for the reasons stated above, the Court finds that Plaintiff has demonstrated that it has an interest in the Property in that it is the assignee of Plaintiff's Mortgage and is the holder of the Note since April 17, 2019. See ECF No. 1 ¶¶ 8-10. ACRIS's online records on the Property includes the assignment of mortgage dated April 17, 2019, whereby Plaintiff was assigned the Mortgage with all interests, liens and rights. See ACRIS Online Records on the Property, Assignment of Mortgage, CFRN 20200000644956, recorded on Feb. 19, 2020.

As to the second element, the Complaint identified Defendant MERS "as nominee for Indymac Bank, FSB" and a "necessary party defendant to this action because it held a prior [m]ortgage on the [P]roperty, which [m]ortgage was not satisfied, in error and requires a court order to discharge it." ECF No. 1 ¶ 4. MERS was served with the summons and Complaint, see ECF Nos. 12 & 22-4 at 3-4, and has received multiple notices from this Court about the action, ECF Nos. 15, 19-20; Dkt. Order 9/21/2022.

As to the third element, ACRIS's online records include the Del Pozo Mortgage dated February 2, 2005 executed on the Property for a sum of $437,000.00 whereby MERS acted as nominee for lender Indymac Bank. See ACRIS Online Records on the Property, Assignment of Mortgage, CFRN 2005000563921, recorded on Oct. 11, 2005. During the August 27, 2024 Status Conference before this Court, Plaintiff's counsel stated that Mr. Del Pozo deeded the

Property to Mr. Campoverde when the Property was sold to him.  See ECF No. 23 at 3:9-12.

The Deed, dated December 29, 2005, was recorded on January 24, 2006.  See ACRIS Online

Records on the Property, Deed, CFRN 2006000042939, recorded on Jan. 24, 2006.  Although the

Del Pozo Mortgage appears to have been satisfied upon transfer of the Deed, the Del Pozo

Mortgage was never marked as discharged.  See ECF No. 23 at 3:13-16; ECF No. 1 ¶ 4

(claiming that MERS is a necessary party because it held a prior mortgage on the Property,

which mortgage "was not satisfied, in error and requires a court order to discharge it").  The

ACRIS Record does not show any foreclosure action against Mr. Del Pozo.  See generally,

ACRIS Online Records on the Property.  In addition, as noted above, MERS has had multiple

interactions with this Property since the Deed transfer was recorded, see supra at p. 4-5, and

notice of this lawsuit, so it is had sufficient notice of the lack of a filing of a satisfaction of the

Del Pozo Mortgage.  There is no record of MERS having ever taken any action to enforce the

Del Pozo Mortgage.  In addition, MERS is not in possession of the Property.

 The Court thus respectfully recommends that Plaintiff's request to discharge MERS's

prior mortgage on the Property be granted.  See ACRIS Online Records on the Property,

Consolidation Agreement, CFRN 2005000563921, recorded on Oct. 11, 2005.

### E.  Damages

 "Upon a finding of liability, the court must conduct an inquiry sufficient to establish

damages to a 'reasonable certainty.'"  Credit Lyonnais Sec. (USA) v. Alcantara, 183 F.3d 151,

155 (2d Cir. 1999) (quoting Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., 109

F.3d 105, 111 (2d Cir. 1997)).  "In an action for foreclosure and sale, damages 'should be

determined under the terms of the Notes and Mortgages[.]'"  Khalil, 2017 WL 1184001, at *5

(citing & quoting E. Sav. Bank, FSB v. Rabito, No. 11 Civ. 2501 (KAM) (VVP), 2014 WL

4804872, at *1 (E.D.N.Y. Sept. 10, 2014)); see Avail 1 LLC v. Latief, No. 17 Civ. 5841 (FB) (VMS), 2020 WL 5633869, at *7 (E.D.N.Y. Aug. 14, 2020), report & recommendation adopted, No. 17 Civ. 05841 (FB) (VMS), 2020 WL 5633099 (E.D.N.Y. Sept. 21, 2020).

Here, Plaintiff submits the sworn affidavit of Jem Farmer, Assistant Secretary of Fay Servicing, LLC, which sets forth the basis for Plaintiff's request for damages. See ECF No. 22-6. Through this affidavit, Plaintiff establishes that the principal balance owed by Mr. Campoverde is $156,365.67, pursuant to the Loan he entered into with Plaintiff's predecessor-in-mortgagee's-interest. See id.; ECF No. 22-2 at 9. Pursuant to the Loan, the interest rate is 11.20%. See ECF Nos. 22, Exh. C; 22-6 ¶ 7. In order to calculate the per diem interest rate, Plaintiff multiplied the principal balance owed ($156,365.67) by 11.2% and divided that total by 365 days. See ECF No. 22-6 ¶ 7. Plaintiff then multiplied that total ($47.98) by the number of days that have passed between June 1, 2016, the date from which interest was owing because of the default, through November 7, 2023, the date on which Jem Farmer swore out her affidavit. See id; see Note, ECF No. 22, Exh. C ¶ 2. The interest owed from June 1, 2016 through November 7, 2023 totals $130,313.68. See id. Plaintiff does not request compound interest.

This Court respectfully recommends that judgment against Mr. Campoverde be entered in the amount of $286,679.35[4] as of November 7, 2023, with further accrued interest awarded at the per diem rate of $47.98 from November 8, 2023 until the date judgment is entered herein.

As Plaintiff does not seek to recover attorneys' fees or costs, this Court respectfully recommends that neither be awarded. See ECF No. 22-1 ¶ 11.

---

[4] $156,365.67 + $130,313.68 = $286,679.35

## F. Appointment Of Referee

Plaintiff also requests that the Court appoint Susan Ellen Rizos, Esq., as Referee to sell the Property. See ECF Nos. 22-1 at 4; 22-3 at 2. Although courts in this Circuit have permitted such appointments where the plaintiff "established a prima facie case by presenting a note, a mortgage, and proof of default," E. Sav. Bank, FSB v. Evancie, No. 13 Civ. 878 (ADS) (WDW), 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014) (permitting a referee to be appointed), courts generally require that the party include the candidate(s)'s resume(s) and qualifications. See U.S. v. Carroll, No. 19 Civ. 1709 (JLS) (LGF), 2023 WL 3260128, at *8 (W.D.N.Y. Mar. 29, 2023), report & recommendation adopted, No. 19 Civ. 1709 (JLS) (LGF), 2023 WL 3254937 (W.D.N.Y. May 3, 2023); U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Christian, No. 19 Civ. 427 (CBA) (RML), 2020 WL 3918566, at *6 n.2 (E.D.N.Y. Feb. 25, 2020), report & recommendation adopted, 2020 WL 3893015 (E.D.N.Y. July 10, 2020); Miss Jones LLC v. Bisram, No. 16 Civ. 7020 (NGG) (SMG), 2018 WL 2074205, at *1 (E.D.N.Y. Feb. 22, 2018).

Under New York law, "[a] referee is entitled, for each day spent in the business of the reference, to three hundred fifty dollars unless a different compensation is fixed by the court or by the consent in writing of all parties not in default for failure to appear or plead." N.Y. CPLR 8003. Courts in this Circuit have found $750.00 to be an appropriate fee for a referee in foreclosure cases. See Freedom Mortg. Corp. v. Trejo, No. 22 Civ. 7116, 2024 WL 3465241, at *1 (E.D.N.Y. July 19, 2024) (ordering that the referee receive $750.00 for conducting the sale); Windward Bora LLC v. Baez, No. 19 Civ. 5698 (PKC) (SMG), 2020 WL 4261130, at *6 (E.D.N.Y. July 24, 2020) (same); Amerino v. Fasano, No. 6 Civ. 3281 (JS), 2008 WL 5378393,

at *2 (E.D.N.Y. Dec. 22, 2008) (ordering that the referee receive a sum not exceeding $750.00 for his fees, including the sale of the property and advertising expenses).

Here, Plaintiff's motion for a default judgment does not include information about Ms. Rizos's qualifications, her resume or the reasons why the Court should approve Ms. Rizos as referee in this matter.  Nonetheless, the Court takes judicial notice of certain facts about Susan Ellen Rizos, Esq., which are available on New York State's online Fiduciary Directory.  Part 36 of the Rules of the Chief Judge (22 NYCRR 36) of the New York Unified Court System governs the appointment made by any judge or justice of the Unified Court System, including referees (other than special masters and those otherwise performing judicial functions in a quasi-judicial capacity).  See Part 36, Section 36.1.  According to Section 36.3 of Part 36, the Chief Administrator establishes the "requirements of education and training for placement on the list of available applicants," which requirements "consist, as appropriate, of substantive issues pertaining to each category of appointment—including applicable law, procedures, and ethics— as well as explications of the rules and procedures implementing the process established by [Part 36]."  Part 36, Section 36.3.

New York State's Fiduciary Directory indicates that Ms. Rizos is eligible to be appointed as a referee in Kings, Queens and New York Counties.  See Part 36 – Fiduciary Online Eligibility List, RIZOS, Susan Ellen (FID: 480564).[5]  As to Queens County, where the Property is located, the Fiduciary Directory indicates that Ms. Rizos is eligible to serve as a referee until November 18, 2024, and that her fees in 2024 are $750.00.  See id.  Under the New York State

---

[5] Available at https://iapps.courts.state.ny.us/fiduciary/appointee (last visited on 8/30/2024).

Attorney Directory, Ms. Rizos is listed as an attorney eligible to practice law since 1998.  <u>See</u> Attorney Online Services – Search, RIZOS, Susan Ellen (Reg. No. 2882264).[6]

Given these qualifications, this Court respectfully recommends that, pursuant to Plaintiff's request, Susan Ellen Rizos, Esq., be appointed as Referee to effectuate the foreclosure and sale of the Property, and that a referee fee be paid in the sum of $750.00 from the proceeds of the sale.

## IV.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Judge: (i) order the foreclosure and sale of the Property, and the appointment of Susan Ellen Rizos, Esq. as Referee; (ii) enter a default judgment for damages against Mr. Campoverde and in favor of the Plaintiff for $286,679.35 as of November 7, 2023, with further accrued interest awarded at the per diem rate of $47.98 from November 8, 2023, until the date judgment is entered herein; (iii) declare MERS's prior mortgage on the Property to be invalid and extinguished pursuant to RPAPL Article 15; and (iv) order that the New York Real Property record be reformed to discharge MERS's prior mortgage on the Property.

The Court further respectfully recommends that judgment of foreclosure and sale be entered to reflect Plaintiff's proposed language included herein as Exhibit A.

## V.    OBJECTIONS

A copy of this report and recommendation will be mailed by chambers to Defendants at: Mortgage Electronic Registration Systems, Inc. s/h/a MERS as nominee for Indymac Bank, FSB, at 11819 Miami St., Suite 100, Omaha, NE 68164; Mortgage Electronic Registration Systems,

---

[6] Available at https://iapps.courts.state.ny.us/attorneyservices/wicket/page/SearchResultsPage?1 (last visited on 8/30/2024).

Inc. s/h/a MERS as nominee for Indymac Bank, FSB, 28 Liberty St., New York, NY 10005; and Jhon Campoverde, 33-27 99th St, First Floor, Corona, NY 11368.  Any objections to this report and recommendation must be filed with the Clerk of Court within seventeen (17) days of the date of this report and recommendation.  Any request for an extension of time to file objections must be made to the Honorable Rachel P. Kovner, the district judge to whom this action is assigned.  Failure to file objections within the specified time waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72; Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate [judge]'s recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

Dated: Brooklyn, New York
       September 11, 2024

*Vera M. Scanlon*
            Vera M. Scanlon
       United States Magistrate Judge

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

EMPIRE COMMUNITY DEVELOPMENT
LLC,

                           Plaintiff,

          -against-

JHON CAMPOVERDE, MERS AS
NOMINEE FOR INDYMAC BANK,
FSB,

                       Defendants.

------------------------------------------------------- x

|  |  |
|---|---|
| : | [PROPOSED] JUDMENT OF |
| : | FORECLOSURE AND SALE |
| : |  |
| : | 22 Civ. 4046 (RPK) (VMS) |

For the reasons stated in the report and recommendation issued on September 9, 2024 and adopted on [DATE], 2024, the Court orders as follows as to the real property described in Attachment A of this Order:

**IT IS ORDERED AND ADJUDGED**, that the mortgaged premises described in the Complaint and described in Attachment A annexed hereto be sold pursuant to this Judgment.

Together with all right, title and interest of the owner thereof, if any, in and to the land lying in the streets and road in front of the adjoining said premises, to the center line thereof.

Together with all fixtures and articles of personal property annexed to, installed in, or used in connection with the mortgage premises, all as more fully set forth in the aforementioned mortgage, attached as Attachment B annexed hereto, be sold in one parcel subject to the following any state of facts that an accurate survey may show; easements, covenants, restrictions or reservations or records, if any; zoning restrictions and any amendments thereto according to law now in force; existing violations and orders of the appropriate departments of any City, Town or Village, if any; the physical condition of the premises at the time of closing; and with any apportionments or adjustments, by and under the direction of Susan Ellen Rizos, Esq., who

1

is hereby designated as Referee herein to sell the mortgaged premises in accordance with that purpose; at public auction to be held on the steps of the Brooklyn Courthouse of the Eastern District of New York, located at 225 Cadman Plaza East, Brooklyn, New York 11201 to be scheduled in consultation with the Clerk of Court or at a location identified by the Referee in the public notice of the sale within Queens County; that said Referee give public notice of the time and place of such sale in accordance with RPAPL § 231 in Newsday newspaper and in the case the Plaintiff shall become the purchaser at the said sale, Plaintiff shall not be required to make any deposit thereon, that said Referee or her duly appointed designee, execute to the purchaser or purchasers on such a sale a deed of the premises sold, that in the event a third party other than the Plaintiff becomes the purchaser or purchasers at such sale, the closing of title shall be had thirty days after such sale unless otherwise stipulated by all parties to the sale; and it is further

**ORDERED** that said Referee or her duly appointed designee then deposit the balance of said proceeds of the sale in her own name as Referee in an FDIC Insured Bank and shall thereafter make the following payments and her checks drawn for that purpose shall be paid by said depository:

1st      The sum of $750.00 to said Referee for her fees herein.

2nd      The expenses of the sale and the advertising expenses as shown on the bills presented to said Referee and certified by her to be correct, duplicate copies of which shall be left with said depository.

3rd      And also the sum of $286,679.35 plus costs, which is the amount computed by the Court with interest from November 7, 2023, as well as further accrued interest awarded at the per diem rate of $47.98 from November 8, 2023 until the date judgment is entered herein.  The final award should also include the amount of any sums expended by Plaintiff for taxes, assessments, water

rates and sewer rents, with interest and penalties accrued thereon as allowed by the Note and Mortgage, or so much thereof as the purchase money of the mortgaged premises will pay of the same; and it is further

**ORDERED AND ADJUDGED**, that said Referee or her duly appointed designee shall take the receipt of Plaintiff or its attorney for the amounts paid as directed in item marked "3rd" and shall file it with her report of sale. That said Referee or her duly appointed designee shall deposit the surplus monies, if any, with the aforesaid depository, within 5 days after the same shall be received and ascertainable, to the credit of this action, to be withdrawn only on the order of a Judge of this Court.

In the event that the Plaintiff or a governmental agency thereof is the purchaser of said mortgaged premises at said sale, or in the event that the rights of the purchaser at said sale and the terms of sale under this judgment shall be assigned to and be acquired by Plaintiff or any such governmental agency, and a valid assignment thereof be filed with the said Referee or her duly appointed designee shall not require Plaintiff or such governmental agency to pay in cash the amount bid at such sale, but shall execute and deliver to Plaintiff or such governmental agency a deed of the premises sold. Plaintiff or such governmental agency shall pay the amount specified in the items marked "1st" and "2nd" and shall also pay the amount of the aforesaid taxes, assessments, water rates, sewer rents and interest and penalties thereon, if any. Said Referee or her duly appointed designee shall apply the balance of the amount bid after deducting therefrom the aforesaid amount paid by Plaintiff or such governmental agency, to the amounts due Plaintiff in the item marked "3rd", and if there be a surplus over and above said amounts due Plaintiff, Plaintiff shall pay to said Referee or her duly appointed designee upon delivery of said

3

Referee's Deed, the amount of such surplus, and said Referee or her duly appointed designees shall deposit said surplus as hereinabove directed.

Said Referee or her duly appointed designee shall make her report of such sale and shall file it with the Clerk of the Court with all convenient speed but no later than 90 days after the sale of the property. If the proceeds of such sale be insufficient to pay the amount adjudged due to Plaintiff with the expenses, interests and costs as aforesaid, said Referee or her duly appointed designee shall specify the amount of such deficiency in her report of sale, the Plaintiff shall recover from Defendant Jhon Campoverde the whole deficiency of so much thereof as the Court may determine to be just and equitable of the residue of the mortgaged debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by section 1371 of the New York Real Property Actions and Proceedings Law within the time limited therein, and the amount thereof is determined and awarded by an order of this Court as provided for in said section; and it is further

**ORDERED AND ADJUDGED,** that the purchaser at said sale be let into possession on production of the said Referee or her duly appointed designee's deed; and it is further

**ORDERED AND ADJUDGED,** that each and all of the Defendants in this action, and all the persons claiming under them, or nay or either of them, after filing of the notice of the pendency of this action, be and hereby be forever barred and foreclosed of all right, title, claim, interest, lien and equity of redemption in said mortgaged premises and each and every party thereof; and it is further

**ORDERED, ADJUDGED AND DECREED,** that said premises is to be sold in one parcel in "as is" physical order and condition, subject to any state of facts that an inspection of

the premises would disclose, any state of facts that an accurate survey of the premises would show; any covenants, restrictions, declarations, reservations, easements, rights of way and public utility agreements of record, if any; any building and zoning ordinances of the municipality in which the mortgaged premises is located and possible violations of same; any rights of tenants or person in possession of the subject premises; prior lien(s) of record, if any, except those liens addressed in section 1354 of the Real Property Actions and Proceedings Law. Said premises commonly known as 33-27 99th Street, Corona, NY 11368. A description of said mortgaged premises is annexed hereto and made a part hereof as Attachment A and it is further

**ORDER, ADJUDGED and DECREED,** that the prior mortgage which appears to be adverse to the mortgage being foreclosed, namely the prior mortgage of Defendant MERS as nominee for Indymac Bank, FSB is hereby declared invalid and extinguished pursuant to RPAPL Article 15 (ACRIS Online Records on the Property, Consolidation Agreement, CFRN 2005000563921, recorded on Oct. 11, 2005); and it is further

**ORDER, ADJUDGED and DECREED,** that Defendant MERS as nominee for Indymac Bank, FSB and all person or entities claiming by, through or under them, be and are hereby forever barred and foreclosed of and from all right, claim, lien, interest or equity of redemption in and to said mortgage premises; and it is further

5

**ORDER, ADJUDGED and DECREED,** that the New York record be reformed to reflect that the prior mortgage of Defendant MERS as nominee for Indymac Bank, FSB (ACRIS Online Records on the Property, Consolidation Agreement, CFRN 2005000563921, recorded on Oct. 11, 2005) invalid and extinguished.

Dated: Brooklyn, New York

_____, 2024

_____
The Honorable Rachel P. Kovner
United States District Judge

6

# ATTACHMENT A

**SCHEDULE A**
**DESCRIPTION**

**Block 1714 Lot 49**

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Corona, in the Second Ward of the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Easterly side of 99th Street (formerly known as 42nd Street and also as Randall Street), distant 300 feet Northerly from the corner formed by the intersection of the Easterly side of 99th Street with the Northerly side of 34th Avenue (formerly known as Hayes Avenue), being the point where the Northerly line of land and premises belonging to the City of New York intersects said Easterly side of 99th Street;

RUNNING THENCE Northerly along said side of 99th Street, 25 feet;

THENCE Easterly at right angles to 99th Street, 112 feet 6 inches;

THENCE Southerly parallel with 99th Street, 25 feet to the Northerly line of said land of the City of New York;

THENCE Westerly along said land at right angles to 99th Street, 112 feet 6 inches to the point or place of BEGINNING.

TOGETHER with the benefits and subject to the burdens of a Right of Way Agreement in Liber 5029 Page 35.

**Premises known as 33-27 99th Street, Corona, New York 11368**

# ATTACHMENT B

<table>
<tr><td>

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

</td><td>



2006100901070002001E171F

</td></tr>
</table>

## RECORDING AND ENDORSEMENT COVER PAGE PAGE 1 OF 12

| Document ID: 2006100901070002 | Document Date: 09-26-2006 | Preparation Date: 10-09-2006 |
|---|---|---|
| Document Type: MORTGAGE | | |
| Document Page Count: 11 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| INTEGRATED ABSTRACT, LLC | ARGENT MORTGAGE COMPANY, LLC |
| 45-53 162ND STREET | C/O NATIONWIDE TITLE CLEARING INC. |
| 1ST FLOOR | 2100 ALT 19 NORTH |
| FLUSHING, NY 11358 | PALM HARBOR, FL 34683 |
| 718-762-5900 | |
| info@integratedabstractllc.com | |

### PROPERTY DATA

| Borough | Block | Lot | - | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 1714 | 49 | | Entire Lot | 33-27 99 STREET |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel ___ Page_____ or File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| JHON CAMPOVERDE | ARGENT MORTGAGE COMPANY, LLC |
| 3327 99TH STREET | 3 PARK PLAZA - 10TH FLOOR |
| CORONA, NY 11368 | IRVINE, CA 92614 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 92.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 160,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 160,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 800.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,800.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 400.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 450.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 10-17-2006 14:50 | |
| TOTAL: | $ | 3,450.00 | City Register File No.(CRFN): | |
| | | | 2006000580763 | |

*Annette M Hill*

*City Register Official Signature*

Argent Mortgage Company, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt 19 North
Palm Harbor, FL 34683

## MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Mortgage." This document, which is dated September 26, 2006                    , will be called the "Mortgage."

(B) "Borrower." JHON CAMPOVERDE

whose address is 3327 99TH STREET, CORONA, NY 11368
will sometimes be called the "Borrower" and sometimes simply "I."

(C) "Lender." Argent Mortgage Company, LLC

will be called the "Lender." Lender is a corporation or association which was formed and which exists under the laws of
Delaware                                                                                    Lender's address is
3 Park Plaza - 10th Floor  Irvine, CA 92614

(D) "Note." The junior lien note signed by Borrower and dated September 26, 2006                    , and extensions
and renewals of that note, will be called the "Note." The Note shows that I owe Lender U.S. $ 160,000.00
plus interest, which I have promised to pay in full by October 1, 2036
(E) "Property." The property that is described below in the section titled "Description of the Property" will be called the
"Property."

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Mortgage. This means that, by signing this
Mortgage, I am giving Lender those rights that are stated in this Mortgage and also those rights that the law gives to lenders
who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result
if I do not:

(A)  Pay all the amounts that I owe Lender as stated in the Note;

(B)  Pay, with interest, any amounts that Lender spends under this Mortgage to protect the value of the Property and
Lender's rights in the Property; and

(C)  Keep all of my promises and agreements under this Mortgage.

With respect to the amounts that I owe under the Note and under this Mortgage, I waive the benefit of the right which is
known as the "homestead exemption." A homestead exemption is a property owner's right to keep a portion of his property
(usually up to a certain dollar amount) free from the claims of creditors. My waiver of this right means that the Lender may
exercise all of its rights under this Mortgage as if I were not entitled, under law, to the benefits of a homestead exemption.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the following Property: Same as above

(A)  The property which is located at 3327 99TH STREET                                        [Street],
CORONA                              [City], NY                    [State], 11368        [Zip Code]. This Property
is in QUEENS                                  County in the State of New York. It has the following legal description:
EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:

To be improved by one or two family only

(B)  All buildings, structures and other improvements that are located on the property described in paragraph (A) of this
section;

0102151834

| NEW YORK - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT |

AM76NY1 (0311)                          Page 1 of 6
                              VMP Mortgage Solutions (800)521-7291

                                                                        Form 3833
                                                                09/26/2006 9:43:08

AM76ny1 (05/2005)Rev.02

(C) All rights in other property that I have as owner of the property described in paragraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the property";

(D) All rents or royalties from the property described in paragraph (A) of this section; and

(E) All of the property described in paragraphs (B) through (D) of this section that I acquire in the future, and all rights described in paragraphs (B) through (D) of this section that I acquire in the future.

It may be that I do not own the Property but am a tenant under a lease. In that case, the rights I am giving to Lender by this Mortgage are rights in my tenancy.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property other than claims and charges of record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because, as a result of something I have done, someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**UNIFORM PROMISES**

I promise and I agree with Lender as follows:

1.  **BORROWER'S PROMISE TO PAY PRINCIPAL AND INTEREST UNDER THE NOTE AND TO FULFILL OTHER PAYMENT OBLIGATIONS**
    I will promptly pay to Lender when due principal and interest under the Note and late charges as stated in the Note.

2.  **AGREEMENTS ABOUT MONTHLY PAYMENTS FOR TAXES AND INSURANCE**
    **(A) Borrower's Obligation to Make Monthly Payments to Lender for Taxes and Insurance**
    I will pay to Lender all amounts necessary to pay for taxes, assessments, ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). I will pay those amounts to Lender (i) unless Lender tells me, in writing, that I do not have to do so or (ii) unless the law requires otherwise. Also, I will not have to pay to Lender any amount for which I am already making monthly payments to the holder of any superior mortgage or deed of trust, if it is a savings or banking institution. I will make those payments on the same day that my monthly payments of principal and interest are due under the Note.

    The amount of each of my payments under this Paragraph 2 will be the sum of the following:
    (i)   One-twelfth of the estimated yearly taxes, assessments (including condominium and planned unit development assessments, if any) and ground rents (if any) on the Property which under the law may be superior to this Mortgage; plus
    (ii)  One-twelfth of the estimated yearly premium for hazard insurance covering the Property; plus
    (iii) One-twelfth of the estimated yearly premium for mortgage insurance (if any).

    Lender will determine from time to time my estimated yearly taxes, assessments, ground rents and insurance premiums based upon existing assessments and bills, and reasonable estimates of future assessments and bills. (Taxes, assessments, ground rents and insurance premiums will be called "taxes and insurance.")

    The amounts that I pay to Lender for taxes and insurance under this Paragraph 2 will be called the "Funds." The Funds are additional protection for Lender in case I do not fulfill my obligations under the Note and under this Mortgage.

    **(B) Lender's Obligations Concerning Borrower's Monthly Payments for Taxes and Insurance**
    Lender will keep the Funds in a savings or banking institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency. If Lender is such an institution then Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay taxes and insurance. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds, and the reason for each deduction.

    Lender may not charge me for holding or keeping the Funds on deposit, for using the Funds to pay taxes and insurance, for analyzing my payments of Funds, or for receiving, verifying and totalling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Mortgage, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

    If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Mortgage, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of Funds. There will be excess amounts if, at any time, the sum of (a) the amount of Funds which Lender is holding or keeping on deposit, plus (b) the amount of the monthly payments of Funds which I still must pay between that time and the due dates of taxes and insurance, is greater than the amount necessary to pay the taxes and insurance when they are due.

    If, when payments of taxes and insurance are due, Lender has not received enough Funds from me to make those payments, I will pay to Lender whatever additional amount is necessary to pay the taxes and insurance in full. I must pay that additional amount in one or more payments as Lender may require.

    When I have paid all of the amounts due under the Note and under this Mortgage, Lender will promptly refund to me any Funds that are then being held or kept on deposit by Lender. If, under Paragraph 20 below, either Lender acquires the Property or the Property is sold, then immediately before the acquisition or sale, Lender will use any Funds which Lender is holding or has on deposit at that time to reduce the amount that I owe to Lender under the Note and under this Mortgage.

Initials: _IZ_    Form 3833
09/26/2006 9:43:08

3.  **APPLICATION OF BORROWER'S PAYMENTS**
Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

(A)  First, to pay the amounts then due to Lender under Paragraph 2 above;
(B)  Next, to pay interest then due under the Note; and
(C)  Next, to pay principal then due under the Note.

4.  **BORROWER'S OBLIGATION TO PAY PRIOR MORTGAGES, CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY**
I will keep all promises that I have made in any superior mortgage or deed of trust, including my promises to make payments when due. I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Mortgage. I will see that any claim, demand or charge that is made against the Property because an obligation has not been fulfilled (known as a "lien") is promptly paid or satisfied if the lien may be superior to this Mortgage. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property.

5.  **BORROWER'S OBLIGATION TO OBTAIN AND TO KEEP HAZARD INSURANCE ON THE PROPERTY**
I will obtain hazard insurance to cover all buildings, structures and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender.

I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and the form of all renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals, subject to the terms of any superior mortgage or deed of trust.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim for insurance benefits, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Note and under this Mortgage. The 30-day period will begin on the date the notice is mailed, or if it is not mailed, on the date the notice is delivered.

6.  **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL OBLIGATIONS IN LEASE AND CONDOMINIUM AND PUD DOCUMENTS**
I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. If the Property is a unit in a condominium or in a planned unit development, I will fulfill all of my obligations under the declaration, by-laws, regulations and other documents that create or govern the condominium or the planned unit development.

7.  **LENDER'S RIGHT TO TAKE ACTION TO PROTECT THE PROPERTY**
If: (A) I do not keep my promises and agreements made in this Mortgage, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as, for example, a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions under this Paragraph 7 may include, for example, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. This Mortgage will protect Lender in case I do not keep this promise to pay those amounts with interest.

I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the same rate stated in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph.

Although Lender may take action under this Paragraph 7, Lender does not have to do so.

8.  **LENDER'S RIGHT TO INSPECT THE PROPERTY**
Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. However, before one of those inspections is made, Lender must give me notice stating a reasonable purpose for the inspection. That purpose must be related to Lender's rights in the Property.

9.  **AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**
A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender, subject to the terms of any superior mortgage or deed of trust.

10. **BORROWER'S OBLIGATIONS TO PAY MORTGAGE INSURANCE PREMIUMS**
If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay premiums in the manner described in Paragraph 2 above.

**11. CONTINUATION OF BORROWER'S OBLIGATIONS**

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Mortgage. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Mortgage.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Mortgage, even if Lender is requested to do so.

**12. CONTINUATION OF LENDER'S RIGHTS**

Even if Lender does not exercise or enforce any right of Lender under this Mortgage or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will still have the right, under Paragraph 20 below, to demand that I make Immediate Payment In Full (see Paragraph 20 for a definition of this phrase) of the amount that I owe to Lender under the Note and under this Mortgage.

**13. LENDER'S ABILITY TO ENFORCE MORE THAN ONE OF LENDER'S RIGHTS**

Each of Lender's rights under this Mortgage is separate. Lender may exercise and enforce one or more of those rights, as well as any of Lender's other rights under the law, one at a time or all at once.

**14. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Subject to the terms of Paragraph 19 below, any person who takes over my rights or obligations under this Mortgage will have all of my rights and will be obligated to keep all of my promises and agreements made in this Mortgage. Similarly, any person who takes over Lender's rights or obligations under this Mortgage will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Mortgage. (In this Mortgage, the word "person" means any person, organization, governmental authority or any other party.)

If more than one person signs this Mortgage as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Mortgage. Lender may enforce Lender's rights under this Mortgage against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under the Note and under this Mortgage. However, if one of us does not sign the Note, then: (A) that person is signing this Mortgage only to give that person's rights in the Property to Lender under the terms of this Mortgage; and (B) that person is not personally obligated to make payments or to act under the Note or under this Mortgage. Any person signing this Mortgage but not signing the Note also agrees (i) that Lender may allow any other Borrower to delay or to change payments due under the Note or under this Mortgage and (ii) that Lender may make other accommodations under the Note or under this Mortgage. Lender may do this without obtaining anyone's consent and without modifying the effect of this Mortgage.

**15. AGREEMENT ABOUT GIVING NOTICES REQUIRED UNDER THIS MORTGAGE**

Unless the law requires otherwise, any notice that must be given to me under this Mortgage will be given by delivering it or by mailing it by certified mail addressed to me at the address stated in the section above titled "Description Of The Property." A notice will be delivered or mailed to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Mortgage will be given by mailing it by certified mail to Lender's address stated in paragraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Mortgage is given when it is mailed or when it is delivered according to the requirements of this Paragraph 15.

**16. LAW THAT GOVERNS THIS MORTGAGE**

The state and local law that applies in the place that the Property is located will govern this Mortgage. This will not limit Federal law that applies to this Mortgage. If any term of this Mortgage or of the Note conflicts with the law, all other terms of this Mortgage and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Mortgage and the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

As used in this Mortgage, the words "costs," "expenses" and "attorneys' fees" include all amounts not prohibited by applicable law or limited in this Mortgage.

**17. BORROWER'S COPY OF THE NOTE AND OF THIS MORTGAGE**

I will be given copies of the Note and of this Mortgage. Those copies must show that the original Note and Mortgage have been signed. I will be given those copies either when I sign the Note and this Mortgage or after this Mortgage has been recorded in the proper official records.

**18. REHABILITATION LOAN AGREEMENT**

I will comply with all of the terms and conditions of any home rehabilitation, improvement, repair, modernization, remodeling or similar loan agreement I have with Lender. If Lender requests it, I will sign and give to Lender an assignment of any rights or claims I might have against persons who supply labor, materials or services in connection with improving the Property. This assignment will be in a form acceptable to Lender.

**19. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Lender may require immediate payment in full of all sums secured by this Mortgage if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Mortgage.

If Lender requires immediate payment in full under this Paragraph 19, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Mortgage without giving me any further notice or demand for payment.

## NON-UNIFORM PROMISES

I also promise and agree with Lender as follows:

**20. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS**

If all of the conditions stated in subparagraphs (A), (B), and (C) of this Paragraph 20 are satisfied, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Mortgage. Lender may do this without making any further demand for payment. This requirement will be called "Immediate Payment in Full."

If Lender requires Immediate Payment In Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." If the proceeds of this sale are insufficient to repay Lender the amounts due to Lender from me under the Note and under this Mortgage, Lender may obtain a court judgment against me personally for the difference between all amounts due from me under the Note and this Mortgage and the sale proceeds. In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and expenses of the foreclosure and sale allowed by law.

Lender may require Immediate Payment In Full under this Paragraph 20 only if all of the following conditions are satisfied:

(A)   I fail to keep any promise or agreement made in this Mortgage, including the promises to pay when due the amounts that I owe to Lender under the Note and under this Mortgage; and
(B)   Lender gives to me, in the manner described in Paragraph 15 above, a notice that states:
    (i)   The promise or agreement that I failed to keep;
    (ii)  The action that I must take to correct that failure;
    (iii) A date by which I must correct the failure. That date must be at least 10 days from the date on which the notice is mailed to me;
    (iv)  That if I do not correct the failure by the date stated in the notice, I will be in default and Lender may require Immediate Payment In Full, and Lender or another person may acquire the Property by means of foreclosure and sale;
    (v)   That if I meet the conditions stated in Paragraph 21 below, I will have the right to have any lawsuit for foreclosure and sale discontinued and to have the Note and this Mortgage remain in full force and effect as if Immediate Payment In Full had never been required; and
    (vi)  That I have the right in any lawsuit for foreclosure and sale to argue that I did not fail to keep any of my promises or agreements under the Note or under this Mortgage, and to present any other defenses that I may have; and
(C)   I do not correct the failure stated in the notice from Lender by the date stated in that notice.

**21. BORROWER'S RIGHT TO HAVE LENDER'S LAWSUIT FOR FORECLOSURE AND SALE DISCONTINUED**

Even if Lender has required Immediate Payment In Full, I may have the right to have discontinued any lawsuit brought by Lender for foreclosure and sale or for other enforcement of this Mortgage. I will have this right at any time before a judgment has been entered enforcing this Mortgage if I meet the following conditions:

(A)   I pay to Lender the full amount that would have been due under this Mortgage and the Note if Lender had not required Immediate Payment In Full; and
(B)   I correct my failure to keep any of my other promises or agreements made in this Mortgage; and
(C)   I pay all of Lender's reasonable expenses in enforcing this Mortgage including, for example, reasonable attorneys' fees; and
(D)   I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Mortgage, and my obligations under the Note and under this Mortgage continue unchanged.

If all of the conditions in this Paragraph 21 are fulfilled, then the Note and this Mortgage will remain in full force and effect as if Immediate Payment In Full had never been required.

**22. LENDER'S RIGHTS TO RENTAL PAYMENTS FROM THE PROPERTY AND TO TAKE POSSESSION OF THE PROPERTY**

As additional protection for Lender, I give to Lender all of my rights to any rental payments from the Property. However, until Lender requires Immediate Payment In Full under Paragraphs 19 or 20 above, or until I abandon the Property, I have the right to collect and keep those rental payments as they become due. I have not given any of my rights to rental payments from the Property to anyone other than the holder of the Superior Mortgage, and I will not do so without Lender's consent in writing. If Lender requires Immediate Payment In Full under Paragraphs 19 or 20 above, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. I agree that if Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 22, the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Mortgage.

If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to be a tenant on the Property.

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 22, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Note and under this Mortgage. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

Initials: _JZ_
Form 3833
09/26/2006 9:43:08

### 23. LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE NOTE AND THIS MORTGAGE ARE PAID IN FULL

When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

### 24. AGREEMENTS ABOUT NEW YORK LIEN LAW

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Mortgage is recorded in the proper official records, construction or other work on any building or other improvement located on the Property has not bee completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or the work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that I have a special responsibility under the law to use the amounts in the manner described in this Paragraph 24.

### 25. Borrower's Statement Regarding the Property. Check box(es) as applicable.

☑ This Security Instrument covers real property improved, or to be improved, by a one (1) or two (2) family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

---

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

---

Borrower and Lender request the holder of any superior mortgage or deed of trust to notify Lender in writing, at Lender's address on page 1 of this Mortgage, if the Borrower is required to make "Immediate Payment in Full" and if there is "foreclosure and sale" under that superior mortgage or deed of trust.

By signing this Mortgage I agree to all of the above.
Witnesses:

_____    _____ (Seal)
                                         JHON CAMPOVERDE      -Borrower

_____    _____ (Seal)
                                                             -Borrower

_____    _____ (Seal)
                                                             -Borrower

                             _____ (Seal)
                                                             -Borrower
                             *(Sign Original Only)*

**STATE OF NEW YORK**                    )
                                         )ss.:
County of ___Queens___                   )

On the 26th day of September in the year 2006 before me, the undersigned, a notary public in and for said state, personally appeared ___Jhon Campoverde___

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that __he__ executed the same in __his__ capacity(ies), and that by __his__ signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public    **JOHN J. TURCK
Notary Public, State of New York
No. 01TU6105593
Qualified in Nassau County
Commission Expires Feb. 9, 20__**

Tax Map Information: _____

09/26/2006 9:43:08

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 26th     day of September, 2006         , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Argent Mortgage Company, LLC

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
3327 99TH STREET, CORONA, NY  11368

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Initials: _____
Page 1 of 4                                   Form 3170 1/01
VMP®-57R (0008)         VMP MORTGAGE FORMS - (800)521-7291    09/26/2006 9:43:08 AM

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

09/26/2006 9:43:08 AM

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

09/26/2006 9:43:08 AM

Initials: _____
Form 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

JHON     E

        (Seal)
        -Borrower

        -Borrower

        (Seal)
        -Borrower

        (Seal)
        -Borrower

        (Seal)
        -Borrower

        (Seal)
        -Borrower

        -Borrower

        -Borrower

7R (0008)         Page 4 of 4         Form 3170 1/01

09/26/2006 9:43:08 AM



**⬛ 001/003**

ST ABSTRACT, LLC
31 Stewart Street

**Schedule A Description**

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Corona, in the Second Ward of the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of 99th Street (formerly known as 42nd Street and also as Randall Street), distant 300 feet northerly from the corner formed by the intersection of the easterly side of 99th Street with the northerly side of 34th Avenue (formerly known as Hayes Avenue), being the point where the northerly line of land and premises belonging to the City of New York intersects said easterly side of 99th Street;

RUNNING THENCE northerly along said side of 99th Street, 25 feet;

THENCE easterly at right angles to 99th Street, 112 feet 6 inches;

THENCE southerly parallel with 99th Street 25 feet to the northerly line of said land of the City of New York;

THENCE westerly along said land at right angles to 99th Street, 112 feet 6 inches to the point or place of BEGINNING.

TOGETHER with the benefits and subject to the burdens of a Right of Way Agreement in liber 5029 page 35.

*Insured*